# EMPLOYMENT AGREEMENT

THIS AGREEMENT sets forth certain conditions of your employment with International Management Advisors Ltd., an Ohio limited liability corporation. The following paragraphs constitute the agreement between you (hereinafter referred to as "Employee") and International Management Advisors Ltd. (hereinafter referred to as "Company").

Employee and Company agree as follows:

1. <u>Term</u>. The term of employment shall be until terminated by either party. Employee agrees to conform to the rules and regulations of Company. Employee understands that the term of employment and compensation can be terminated, with or without cause, at any time by Company or by Employee.

2. <u>Salary</u>. Employee's starting salary shall be $50,000 per year as agreed payable semi-monthly on the 15th and last day of each month.

3. <u>Confidentiality</u>. (a) Company recognizes and acknowledges that Employee's services make them privy to personal and confidential matters and information that is or could be of interest to the press or general public because of Company's clientele. As used herein, "Confidential Information" includes all information that is furnished to Employee by Company, all other information gained by Employee about Company in connection with providing services, and the terms of this Agreement. Employee further acknowledges that the disclosure of such information could cause Company extreme personal and economic harm for which an adequate remedy does not exist at law. Employee agrees that the obligations herein in connection with the Confidential Information will continue even after their services have been terminated.

(b) The Confidential Information will not be used other than in connection with the purpose described above, and will be kept confidential by Employee. Employee will not in any manner disclose the Confidential Information to any person other than as permitted hereby, and Employee agrees that they will use best efforts to safeguard the Confidential Information from unauthorized disclosure. The term "person" as used in this Agreement will be broadly interpreted to include without limitation any individual, corporation, company, partnership or other entity.

(c) If Employee is requested or required by law or legal process (e.g., by oral question, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any Confidential Information, Employee will promptly notify Company of such request or requirement so that Company may seek an appropriate protective order or waive compliance with provisions of this Agreement.

(d) Any Confidential Information in document form (including photographs) will be provided or returned to Company immediately at its request, and no copies will be retained by Employee. Any Confidential Information not so requested or returned will be held by Employee and kept subject to the terms of this Agreement or destroyed.


EXHIBIT 1

(e) No failure or delay in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

(f) All rights that Company may have in the Confidential Information, such as copyright, trade secret or similar intellectual property right, will be retained exclusively by Company. Nothing in this Agreement will be construed as granting any license, waiver or right to Employee with respect to any Confidential Information disclosed under this Agreement.

(g) Money damages would not be a sufficient remedy for any breach of this Agreement by Employee and Company will be entitled to specific performance and injunctive relief as remedies for any such breach. Such remedies will not be deemed to be the exclusive remedies for any breach of this Agreement but will be in addition to all other remedies available at law or equity.

4. Files/Ownership of Creations. (a) Employee acknowledges that files, documents and records of any kind relating to Company and Company's business, including materials created by Employee, are the property of Company. They shall not be removed from Company's offices except as required in the conduct of Company's business, and shall be returned to Company at the termination of Employee's employment. Company's files, documents and records include files maintained in Company's file rooms, files maintained on Company's computer systems and on personal computers used for Company business, files maintained by company executives, such as chronological files and suspense files, rolodex address files, 3 x 5 card files, information recorded on computer diskettes or other computer information storage media, computer printouts.

(b) Employee agrees that all creative materials, research, drafts, documents, surveys, source codes, programs, other deliverables and materials prepared by Employee for Company (collectively the "Materials"), will be owned by Company, and that Employee will cooperate with Company to evidence and perfect its rights therein. Employee acknowledges that all such Materials are works made for hire for Company. If for any reason any or all of the Material are deemed not to be on a work-for-hire basis, by signing this Agreement, Employee irrevocably assigns to Company all right, title and interest to any materials created by Employee for Company. Any and all rights relating to the Materials, including all forms and derivatives thereof in all languages and all materials used in preparing the Materials, belong exclusively to Company, throughout the world and in perpetuity. Company, in its sole discretion, is entitled to dispose of any or all of those rights as it sees fit and is entitled to all proceeds from the disposition of those rights. Upon request of Company and its expense, Employee agrees to execute and deliver any and all documents or take any other action that Company deems necessary to obtain perfect, enforce or defend any and all copyright, patent, trademark or other intellectual property rights or protections in and to Materials, or otherwise vest in Company ownership of Materials and intellectual property rights thereto throughout the world.

5.      Arbitration. Unless the resolution of a particular dispute is barred by law, the parties agree to submit to arbitration any dispute related to the employment relationship and agree that the arbitration process shall be the exclusive, final and binding means for resolving disputes which the parties cannot themselves resolve. Any arbitration hereunder shall be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA") as modified herein. Arbitration proceedings shall take place in Cleveland, Ohio, before a single neutral arbitrator who shall be a lawyer. All arbitration proceedings shall be confidential. Neither party shall disclose any information about the evidence produced by the other party in the arbitration proceeding, except in the course of judicial, regulatory, or arbitration proceeding, or as may be demanded by government authority. Before making any disclosure permitted by the preceding sentence, a party shall give the other party reasonable advance written notice of the intended disclosure and an opportunity to prevent disclosure. Each party shall have the right to take the deposition of one individual and any expert witness designated by the other party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. Only evidence that is directly relevant to the issues may be obtained in discovery. Each party bears the burden of persuasion of any claim or counterclaim raised by that party. The arbitration provisions of this Agreement shall not prevent Company from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations of Paragraphs 4 and 5 for which Company may obtain provisional relief pending a decision on the merits by the arbitrator. Employee consents to the jurisdiction of Ohio courts for such purpose. The arbitrator shall have authority to award any remedy or relief that a court of the State of Ohio or federal court located in the State of Ohio could grant in conformity to applicable law on the basis of claims actually made in the arbitration. The arbitrator may allow reasonable attorney's fees as a part of the award where the discretion to allow such fees is provided under applicable Ohio or federal law. Any arbitration award shall be accompanied by a written statement containing a summary of the issues in controversy, a description of the award, and an explanation of the reasons for the award. The arbitrator's award shall be final and judgment may be entered upon such award by any court. Employee's share of the administration and arbitrator's fees for the arbitration will be Two Hundred Fifty Dollars ($250.00). The remainder of the administration and arbitrator's fees will be paid by Company. Any reference in this clause to Company also refers to all subsidiary and affiliated entities, all benefit plans, sponsors and trustees of benefit plans, fiduciaries, administrators, officers and directors.

This arbitration procedure will be governed by the Federal Arbitration Act as will any actions to compel, enforce, vacate or conform proceedings, awards, orders of the Arbitration or settlement under this procedure.

6.      Representation of Existing and Prospective Clients, Properties, and Customers. During the Employee's employment with the Company, the Employee will not solicit nor represent any client, property, or customer on behalf of anyone other than the Company. For the period of two years following the end of Employee's employment with the Company, Employee will not directly or indirectly solicit or represent as a client, on Employee's own behalf or on behalf of another, or be employed by, any person or organization which: (i) was a client of the Company within eighteen months next preceding the end of Employee's employment with the Company and/or was a client with whom Employee had dealings while Employee was associated with the Company or was a client with whom employees reporting to Employee had dealings while Employee was associated with the Company; or (ii) was a prospective client of the Company who was actively solicited as such within the

-3-

twelve months next preceding the end of Employee; employment with the Company, and further, Employee or Company employees reporting to Employee, participated in such solicitation.

8. <u>Company Personnel</u>. During Employee's employment with the Company and for the twelve months following the end of Employee's employment with the Company, Employee will not directly or indirectly, on Employee's own behalf or on behalf of another, be involved with the hiring of nor be hired by or associated with, any person who was an employee of the Company, or who provided substantial services to the Company at any time during the six months next preceding the end of Employee's employment with the Company.

9. <u>Restrictions re Certain Companies</u>. For the twelve month period next following the end of your association with the Company, (regardless of the reason for the end of that association and regardless of whether it was by your choice or that of the Company), you will not, directly or indirectly, perform services in the nature of the services you performed for the Company including but not limited to the solicitation, representation or financial management of professional athletes or prospective professional athletes on behalf of any and all affiliates and/or successors of entities that are, or may be associated with the representation, management, marketing, consulting or other professional services for professional athletes including specifically, but not limited to, Creative Artists Agency, Relativity Sports, ASM Sports, Excel Sports, Wasserman or Priority Sports or any other registered agent with the NBA or NFL Players Associations or any company or affiliate of any company employing NBA or NFL registered agents. You agree not to be employed by any persons or companies representing or seeking to represent prospective or current professional basketball or American football players for contract, marketing or financial services for the twelve month period next following the end of your association with the company.

10. <u>Miscellaneous</u>. (a) Employee acknowledges and agrees that Employee is free of employment restrictions from former employers and that Employee is not a party to any agreement, the terms of which are inconsistent with the terms of this Agreement, or which would be breached by Employee's services to Company.

(b) If any provision of this Agreement is found to be unenforceable by reason of being unduly broad or restrictive, then such provision shall be interpreted and enforced to such lesser extent as is not unduly broad or restrictive.

(c) The provisions of this Agreement shall be deemed to be severable, and the invalidity or unenforceability of any provision shall not affect the validity or unenforceability of any other provision. The breach by the Company of any obligation or duty to Employee shall entitle Employee to their appropriate remedy at law but shall not, of itself, relieve Employee of any other obligation set forth in this Agreement.

(d) Employee agrees that any breach of this Agreement could cause irreparable harm to Company and that in the event of such breach, Company shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent any violation of Employees' obligations hereunder.

11. <u>Choice of Law</u>. This Agreement, except as provided in Paragraph 5, shall be interpreted and enforced in accordance with the substantive laws of the State of Ohio.

12. <u>Employee's Right to Consult with Administrative Agencies.</u> Nothing in this Agreement is meant to foreclose the Employee's right to consult with or cooperate with any governmental agency but Paragraph 6 is meant to provide an arbital forum to finally resolve any work-related claim the Employee may wish to pursue.

13. <u>Merger.</u> This Agreement sets forth the entire agreement between Company and Employee with respect to the subject matter, and all negotiations, understandings and prior agreements (whether oral or in writing) are merged herein. This Agreement may not be changed except by an instrument in writing signed by both parties hereto.

IN WITNESS WHEREOF, Company and Employee have executed this agreement as of the date and year set forth below.

Agreed                                                                International Management Advisors, Ltd.

_____                  By:_____
Christian Vaughn Dawkins                                      Name: Kurt J. Schoeppler
                                                                              Title:   President

<u>Addendum</u>

Notwithstanding anything to the contrary in this agreement, Employee may represent prospective and existing clients of IMA provided that all future gross revenue received by Employee or any future employer, partner or entity associated with Employee, on whose behalf or benefit Employee solicits directly or indirectly or provides services to, a client or prospective client of IMA, will be split 60/40 in favor of IMA. For the purpose of this addendum "gross revenue" means the future total amount billed invoiced or due from any current or prospective client of IMA for any financial, accounting, investment, insurance, marketing or contract negotiation services.

The purpose of this addendum is to allow Employee to leave IMA and receive 40% of the gross revenue earned from any client or prospective client of IMA who chooses to continue his relationship with Employee or any entity related to Employee (directly or indirectly) for any future services provided by employee, his employer, partner or related entity, after employee is separated from employment with IMA provided that IMA continues to receive 60% of all gross revenue generated from client.

If the future employers of Employee or any related entities, partners or associates of Employee are unwilling or unable to agree to these terms and provide IMA with sufficient guarantee and/or security assuring IMA that such payments of 60% of gross revenue will be made in the future immediately upon their receipts (as determined solely by IMA) then all the non-compete and other restrictions including but not limited to those described in paragraphs 6 and 9 of this agreement will remain in full force and effect and the Employee will be restricted from representing or providing any services to current and prospective clients of IMA.

-6-

The arbitration provision of paragraph 5 applies fully to this addendum as well as the injunction rights provided in paragraph 10D.

If this addendum is found to be unenforceable then this agreement shall be interpreted without this addendum.

_____    4/29/14    _____
Christian Vaughn Dawkins    Date        Kurt Schoeppler