IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| INTERNATIONAL MANAGEMENT ADVISORS LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:16-cv-1325-TWP-TAB |
| ASM SPORTS GROUP, LLC, and ANDY MILLER, | ) ) ) ) | |
| Defendants. | ) | |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO SERVE SUBPOENA ON NON-PARTY UBER TECHNOLOGIES, INC.

Plaintiff, International Management Advisors Ltd. ("IMA"), by counsel, pursuant to S.D.Ind.L.R. 7-1(c), respectfully submits the following reply brief in support of its Motion for Leave to Serve Subpoena on Non-Party Uber Technologies, Inc. ("Motion").

#### INTRODUCTION

In its Motion, IMA made a simple request for leave to obtain records from Uber Technologies, Inc. ("Uber") relating to the fraudulent use of a credit card by ASM Sports Group, LLC's ("ASM") employee, Christian Dawkins, that resulted in 1856 unauthorized transactions between July 2015 and May 2016 totaling over $42,000.  Despite the fact that the records relate to IMA's own credit card (query why Defendants would or should care), Defendants ardently object.  However, they cannot and do not provide any substantive basis for their objection (such as relevance, confidentiality, prejudice, etc.), and instead base their objection on the customary timing of discovery outlined in Rule 26(f) of the Federal Rules of Civil Procedure – which can be modified whenever necessary.  Defendants also mislead the Court by providing an initial statement from Elfrid Payton that was drafted by their counsel without disclosing that

Mr. Payton issued a clarifying statement the following week that materially changed the initial statement provided to the Court (despite having both statements in their possession when Defendants filed their response). Further, Defendants claim that the Uber documents are being subpoenaed in the Ohio arbitration and thus no subpoena in this case is necessary, but omit reference to a stipulation insisted on by Defendants' counsel that renders the arbitration subpoena useless in this case. For the reasons stated in the Motion, and the reasons that follow, the Court should grant IMA's simple request to serve a subpoena to obtain records relating to fraudulent usage of its credit card.

## ARGUMENT

Defendants advance several arguments in their Opposition to Motion for Leave to Serve Subpoena on Non-party Uber Technologies, Inc. ("Opposition"), each of which is briefly addressed below.

First, Defendants contend that a similar subpoena served on Uber in arbitration between IMA and Mr. Dawkins satisfies all concerns about the loss of data from Uber. Opposition at 5. Defendants do not mention, however, that their counsel lobbied the arbitrator for an order that the Uber documents "(1) will only be used by IMA in this arbitration and not in any other state or federal civil action, or in any other proceeding or for any other purpose; (2) will only be shared by IMA with its outside attorneys [handling the Ohio arbitration], and will not be shared with any other individuals, entities or attorneys (including but not limited to the law firm of Bose McKinney and Evans …")." A true and accurate copy of the email exchange setting the conditions is attached as Exhibit 1. These conditions were accepted by the arbitrator. Thus, Defendants succeeded in prohibiting the use of the Uber records in this case, yet Defendants

claim that the arbitration subpoena alleviates the need to subpoena the documents in this case. Clearly it does not.

Moreover, it is unclear if Uber will even respond to a subpoena issued by an Ohio arbitration panel or what documents Uber will provide if it responds. The enforceability of a subpoena in an out-of-state arbitration proceeding is certainly subject to greater question than a subpoena from a federal court. There is no compelling reason for IMA to be forced to wait and see if Uber responds to an arbitration subpoena, and to what extent, particularly where the concern precipitating IMA's request to serve the subpoena early relates to an e-commerce company's record retention practices.

Second, Defendants contend that the Uber records are unnecessary because the allegation of Mr. Dawkins' theft of IMA's credit card issued to Elfrid Payton is "demonstrably false." Opposition at 3, 5. In support, Defendants attached as Exhibit C a June 2, 2016 letter drafted by counsel for Defendants stating that Mr. Dawkins was given permission to use the American Express credit card to arrange transportation for Mr. Payton's family.[1] Thus, Defendants create the impression with the Court that Mr. Dawkins had permission from Mr. Payton to incur the Uber charges and that the claims to the contrary in the Complaint are "demonstrably false."

Defendants conceal from the Court that just nine days later, on June 11, 2016, Mr. Payton signed a second letter clarifying his previous letter and correcting the very misimpression that Defendants advance here. A true and accurate copy of the June 11 letter is attached as Exhibit 2. In the June 11 letter, Mr. Payton stated that he initially gave Mr. Dawkins permission to use the American Express credit card during the 2015 NBA All Star game to make accommodations for

---

[1] IMA understands that the June 2, 2016 letter was drafted by counsel for Defendants and presented to 22 year-old Mr. Payton for signature without any review by Mr. Payton's attorneys or advisors. Moreover, IMA understands that Mr. Payton was not made aware that 1,856 Uber trips had been charged by Mr. Dawkins at the time he signed the initial letter.

3

Mr. Payton's family. However, Mr. Payton stated unequivocally, "***I did not authorize 1,856 additional UBER trips costing over $42,000. These charges were made without my authorization or knowledge.*** To resolve this matter once and for all, I am requesting that you provide me and my advisors all the detail available from Uber supporting these charges." Exhibit 2 (emphasis added). Thus, Mr. Payton's second letter squarely supports the allegation that Mr. Dawkins stole the IMA credit card issued to Mr. Payton by fraudulently using the card long after Mr. Dawkins' permission lapsed, incurring over $42,000 in Uber charges in the process in ways that bore no relationship to the limited and temporary permission Mr. Dawkins initially received.

Defendants' reliance on the initial letter from Mr. Payton, while hiding the second letter that materially modified and clarified the first, exceeds the bounds of zealous advocacy and is a misrepresentation intended to mislead the Court. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (describing the omission of key deposition testimony that left the court with a misimpression as "disturbing"); *In re Tucker*, No. BR 12-02052, 2014 WL 3956769, at *5 (D. Haw. Aug. 12, 2014) ("Relying on an e-mail that was corrected three days later without even acknowledging the corrected e-mail is not zealous advocacy; it is tantamount to a misrepresentation of the record."); *Starkey ex rel. Starkey v. Somers Cent. Sch. Dist.*, 319 F. Supp. 2d 410, 419 n. 5 (S.D.N.Y. 2004) ("While this Court appreciates zealous advocacy and recognizes that it is the job of counsel to assert the facts in a manner most favorable to their client, counsel may not misrepresent the facts to further their client's position.").[2] The Uber documents are critical to supporting the claim that Mr. Dawkins misused the American Express

---

[2] IMA is not certain that local counsel who signed the Opposition was aware of the second Payton letter. However, lead counsel for Defendants in Cleveland were aware because the letter was sent to them on June 13, 2016.

4

credit card, an important issue in the case. Indeed, while Defendants cry foul about the use of the word "stole", they simultaneously object to IMA's ability to investigate the matter further by obtaining the source records from Uber.

Third, Defendants argue that because they intend to move to dismiss, transfer, or stay the case that a subpoena to Uber should not issue. Opposition at 1. On July 5, 2016, Defendants filed the motion contemplated, but nothing in that motion supports denying IMA access to Uber records for illegal use of its credit card. Aside from the fact that Defendants' motion should be denied for various reasons that will be briefed at a later date, the transfer or stay of the case would not alter the need for the Uber records. Indeed, a stay of the case *supports* IMA's request for the Uber records to avoid delays that would jeopardize IMA's ability to obtain the documents. And in the event of transfer of the case to New Jersey (as requested by Defendants), the Uber records will be just as relevant and important in that jurisdiction when the case proceeds. There simply is no good faith basis for objecting to the production of the Uber records.

Fourth and finally, Defendants make several merits-based claims in their Opposition apparently intended to color the analysis, although they have nothing to do with the narrow issue of leave to serve a subpoena on Uber. Defendants contend that IMA is merely a financial advisory firm (not a sports agent) and that ASM is merely a sports agent (not a financial advisory firm). Opposition at 2. The evidence will show that Defendants are wrong on both counts. Defendants also rely on a purported release of paragraph 9 of the Employment Agreement, without mentioning that the release was never effective and that, in any event, paragraph 6 of the Employment Agreement (prohibiting solicitation of IMA clients) was also violated. Because

these arguments have nothing to do with the simple request for leave to serve a subpoena on Uber before the Rule 26(f) conference, IMA will refrain from responding further at this time.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Motion, IMA respectfully requests that the Court grant it leave to serve a subpoena on Uber.

Respectfully submitted,

/s/ Paul D. Vink
Paul D. Vink, Atty. No. 23785-32
Andrew M. McNeil, Atty. No. 19140-49
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000 (phone)
(317) 684-5173 (fax)
pvink@boselaw.com

*Attorneys for Plaintiff, International Management Advisor Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2016, a copy of the foregoing was served via the Court's ECF system on:

>Tracy N. Betz
>TAFT STETTINIUS & HOLLISTER LLP
>One Indiana Square, Suite 3500
>Indianapolis, IN 46204
>tbetz@taftlaw.com

>/s/ Paul D. Vink

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
(317) 684-5000 (phone)
(317) 684-5173 (facsimile)

3028968_1/27207-1