# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| INTERNATIONAL MANAGEMENT ADVISORS LTD., | ) ) ) |
| Plaintiff, | ) ) ) |
| -v- | ) ) ) |
| ASM SPORTS GROUP, LLC and ANDY MILLER, | ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 1:16-cv-1325-TWP-TAB

Hon. Tanya Walton Pratt

Hon. Tim A. Baker

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, TRANSFER OR STAY THIS ACTION**

I. **This case has nothing to do with Indiana and should be dismissed for lack of venue or transferred to the District of New Jersey.**

This action arises out of the Defendants' alleged tortious interference with the Employment Agreement between Plaintiff IMA and non-party Christian Dawkins. In the Complaint, there are no allegations that the Employment Agreement was negotiated in Indiana, or agreed-to in Indiana, or performed in Indiana, or breached in Indiana, or interfered with in Indiana – no material connection whatsoever between Indiana, the Employment Agreement and the alleged interference therewith.

Nevertheless, in its brief in opposition (the "Opposition") to Defendants' Motion to Dismiss, IMA argues that a "substantial part" of the events underlying its claims occurred in Indiana because Defendants' general counsel allegedly reviewed the Employment Agreement, one time, in Indiana. *See* Opposition at p. 8 ("Hensley's actions – which occurred from his Indianapolis office – are a key 'part of the historical predicate for the instant suit.'"). But a close review shows that ***there are no allegations in the Complaint*** that Mr. Hensley's review of the Employment Agreement occurred Indiana. The argument in the Opposition that the review occurred in Indiana is not supported by any allegation in the Complaint – meaning that the review of the Employment Agreement could have occurred anywhere. Thus, Plaintiff's argument that Mr. Hensley's review of the Employment Agreement in Indianapolis is part of the "historical predicate" of its claims is based on an unpled-factual allegation, and should be disregarded.

For venue to be proper in a given judicial district, a "substantial part" of events underlying the litigation must have occurred in the forum district. Plaintiff relies heavily on *Beller v. MacDermid, Inc.*, 2002 U.S. Dist. LEXIS 17380, *16 (S.D. Ind. Sept. 9, 2002) in support of its argument that venue is proper in Indiana. But *Beller* had far deeper connections to

Indiana than the isolated and singular review of a contract which may or may not have occurred in Indiana here; indeed, *Beller* involved a contract with an automotive plant based in Indiana procured by a salesman whose "territory [] included Evansville, Indiana." *Id.* at *2. On these facts, the *Beller* court concluded that venue was proper:

> Beller was a sales agent for MacDermid and worked within a particular sales territory that included this district. Beller thus performed employment-related responsibilities in this judicial district. Further, Beller's damages claims are based in substantial part on commissions from a contract that he alleges he procured for MacDermid with Guardian in Evansville, Indiana. Beller asserts that he was MacDermid's main contact with Guardian and that he negotiated the contract with Guardian in Evansville. Under the contract, MacDermid will earn an estimated $500,000 in gross income by continuously supplying Guardian's Evansville plant with chemicals . . .

*Id.* at *15. Thus, *Beller* is plainly distinguishable from this case, in which an Ohio Plaintiff has sued two New Jersey Defendants, alleging that the Defendants caused a Georgia resident to breach his Employment Agreement (governed by Ohio law) by soliciting individuals working or living outside of Indiana (in South Carolina, Louisiana and Florida) to join ASM Sports. *Beller* is inapposite.

In short, it is clear from the face of the Complaint that a "substantial part" of the events giving rise to IMA's claims did not occur in Indiana; at most, an isolated and immaterial event occurred here, and that is insufficient to support venue. *See Diversity Max, LLC v. Waller*, 2016 U.S. Dist. LEXIS 44000, at *14 (S.D. Ind. Mar. 31, 2016); *Philpot v. Eagle Communs., Inc.*, 2015 U.S. Dist. LEXIS 88367, at *11 (S.D. Ind. July 8, 2015) (granting motion to dismiss for lack of venue where "none of the relevant events occurred within Indiana").

Even if this Court determines that venue is proper here, the case should still be transferred to the United States District Court for the District of New Jersey under 28 U.S.C. § 1404. Plaintiff's argument against transfer is largely duplicative of its argument against dismissal on venue grounds – that Mr. Hensley's purported review of the Employment

Agreement provides a material connection to Indiana. But for the reasons stated above, this is simply not true. Moreover, Plaintiff does not and cannot dispute that its choice-of-forum is entitled to little deference because Plaintiff does not reside in Indiana. Plaintiff also does not and cannot dispute that New Jersey is home to Defendant Miller and the place where Defendant ASM Sports is headquartered, giving New Jersey a far deeper connection to this litigation than Indiana. Finally, with respect to judicial economy, Plaintiff simply ignores the fact that this District is in a state of "judicial emergency," *see* Motion at p. 18, and instead argues that the case should not be transferred because it can be tried more "expeditiously" in Indiana. Plaintiff provides no legal citation whatsoever for this novel argument that an "expeditious" trial weighs against transfer.

This case should accordingly be dismissed for lack of venue or transferred to the United States District Court for the District of New Jersey.

II.  **In the alternative, this case should be stayed pending resolution of the Ohio Arbitration.**

If this action is not dismissed for improper venue or transferred to New Jersey, it should be stayed pending resolution of the pending and substantially-related Ohio Arbitration. Plaintiff does not dispute that the Ohio Arbitration may be *res judicata* against IMA with respect to the question of whether Mr. Dawkins breached the Employment Agreement – a question that is undisputedly central to this litigation as well. Resolution of the Ohio Arbitration could thus substantially narrow the scope of issues to be decided here (which would, in turn, narrow the scope of discovery between the parties and limit the issues before the Court). A stay pending resolution of the Ohio Arbitration would benefit the parties and the Court without working any prejudice to IMA.

In arguing against a stay, Plaintiff does not address at all the factors to be employed in determining whether or not a stay should be granted. Instead, Plaintiff argues: "As a practical matter, the arbitration hearing is set to commence on September 7, 2016 – approximately a month after Defendants' Motion will be fully briefed. Thus, at the time the Court rules on this Motion, this issue is almost certain to be moot." Opp. at p. 17. This is not so – it assumes that the Ohio Arbitration will be decided without any post-hearing briefing or opinions, which could extend the Ohio Arbitration for several months, and it also assumes that this Court will not resolve this motion before early September. Neither assumption is necessarily correct. And, in any event, this argument demonstrates that a stay will likely only last a short period of time, thereby eliminating virtually any hardship to IMA.

Accordingly, if this action is not dismissed for lack of venue or transferred to New Jersey, it should be stayed pending resolution of the substantially-related Ohio Arbitration.

III.  **The restrictive covenants in the Employment Agreement are unenforceable as a matter of Ohio law.**

Separately, Plaintiff's claim for tortious interference with contract should be dismissed under Rule 12(b)(6) because the Complaint fails to allege a key element of the claim – namely, breach of the underlying Employment Agreement. *See Russo v. Nagel*, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div. 2003); *Sony Elecs. v. Grass Valley Group*, 2002 Ohio App. LEXIS 1304, at *9 (Ohio Ct. App. 2002) (plaintiff must prove "defendant's intentional procurement of the contract's breach"); see *also Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (plaintiff must prove "defendant's intentional inducement of breach of the contract").

In the Opposition, Plaintiff argues that Defendants have presented an alternative "factual narrative" in support of moving to dismiss the tortious interference claim on 12(b)(6) grounds. But the argument is based on the facts alleged in the Complaint and other information properly

before this Court, which show that IMA has no legitimate business interest in enforcing non-compete and non-solicitation clauses against Mr. Dawkins.  Specifically, the non-compete and non-solicitation clauses are invalid under Ohio law because ASM Sports (which hired Mr. Dawkins) and IMA (which previously employed Mr. Dawkins) are not actual competitors: IMA provides financial and investment advisory services to its clients, while ASM Sports provides contract negotiation and marketing services to professional basketball players.  Plaintiff alleges in very conclusory fashion that it is a "sports agency" firm, but fails to identify a single player for whom it provides such services, and a search of public records shows that IMA only has one such client.[1]  Thus, Mr. Dawkins did not and could not have breached the Employment Agreement by recruiting clients to ASM Sports for sports agency services (as opposed to the financial and investment advisory services which IMA provides to a wide variety of clients and which were the only services intended to be within the scope of the restrictive covenants in the Employment Agreement).  *See, e.g., MP TotalCare Servs. v. Mattimoe*, 648 F. Supp. 2d 956, 964 (N.D. Ohio 2009) (finding restrictive covenant invalid where it purported to prohibit former employee from engaging in business activity outside of the field that former employer engaged in); *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 957 (D. Minn. 1999) (applying Ohio law) (finding provision without parameters on the prohibited activities was not reasonably limited to protect employer's interests).

      Moreover, there are no allegations in the Complaint that Mr. Dawkins developed his professional relationships while at IMA, or that he lacked such relationships prior to joining IMA.  This is fatal to Plaintiff's claims – the absence of factual allegations showing that Mr. Dawkins' developed his relationships or skills at IMA shows that IMA lacks any legitimate

---

[1] http://www.draftexpress.com/agents/Kurt-Schoeppler-68/

interest in preventing Mr. Dawkins from earning a living using those pre-existing skills and relationships after leaving IMA's employ.  *See, e.g.*, *Brentlinger Enters. v. Curran*, 141 Ohio App. 3d 640, 649 (Ohio Ct. App. Franklin Cty. 2001) (restrictive covenant that purported to restrict competition by an employee who had worked for the employer for less than a year was unenforceable, given that the employer's customer list was already protected); *American Building Services., Inc. v. Cohen*, 78 Ohio App. 3d 29, 34 (Ohio Ct. App. Butler Cty. 1992) (finding a non-compete agreement unreasonable where defendant worked for plaintiff only a short period of time and defendant "obtained much of his experience and skill as a salesperson and manager" during his previous employment).

Because the restrictive covenants in the Employment Agreement are unenforceable under Ohio law, Mr. Dawkins could not have breached them, and because there is no breach there can be no claim for tortious interference.  Plaintiff's claim should accordingly be dismissed.[2]

## CONCLUSION

For these reasons, and those stated more fully in their opening Motion, Defendants respectfully request that this action be dismissed, transferred or stayed.

---

[2] Plaintiff very casually accuses Defendants of "attempt[ing] to mislead" the Court in connection with Plaintiff's allegations regarding Mr. Dawkins' use of an American Express card belonging to IMA client Elfrid Payton.  In the Motion to Dismiss, Defendants stated that the allegations at Paragraph 48 of the Complaint that Mr. Dawkins' "stole" Mr. Payton's credit card to "establish an account with Uber" are demonstrably false, as Mr. Payton stated in a letter dated June 2, 2016.  Plaintiff accuses Defendants of attempting to mislead the Court by not referring to a second letter from Mr. Payton dated June 11, 2016.  But in his second letter, Mr. Payton again made clear that he had voluntarily provided Mr. Dawkins his credit card for the purposes of setting up an Uber account: "*I did authorize and provide you with my IMA/Elfrid Payton American Express card to arrange transportation with Uber* for my family during the 2015 NBA All Star Game.  I also authorized you to make a limited number of hotel and airline reservations for my family."  *See* ECF No. 17-2.  This completely belies both Plaintiff's accusations of a "misrepresentation" and, more importantly, the allegations at Paragraph 48 of the Complaint.  Those allegations should be withdrawn immediately because they are undisputedly and demonstrably false.

Dated August 1, 2016	Respectfully submitted,

   /s/   *Tracy N. Betz*
Tracy N. Betz (24800-53)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Phone: (317) 713-3532
Fax: (317) 713-3699
Email: tbetz@taftlaw.com

*Attorney for ASM Sports Group, LLC and Andy Miller*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

   /s/   *Tracy N. Betz*